# Constitutionality of Legislation Extending the Terms of Office of United States Parole Commissioners

Because United States Parole Commissioners may be removed by the President at will, legislation extending the terms of office of certain Parole Commissioners, does not violate the Appointments Clause.

July 15, 1994

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have asked for our opinion as to whether Pub. L. No. 101-650, § 316, 104 Stat. 5089, 5115 (1990), which extends the terms of United States Parole Commissioners to November 1, 1997, violates the Appointments Clause of the Constitution. U.S. Const. art. II, § 2, cl. 2. We conclude that it does not.

## I.

The United States Parole Commission ("Parole Commission") is an "independent agency in the Department of Justice," 18 U.S.C. § 4202, and is vested with authority to establish the organizational structure for receiving, hearing, and deciding requests for parole; to grant or deny an application for parole; to impose reasonable conditions on an order granting parole; to modify or revoke an order paroling any prisoner; to request probation officers and any other appropriate individuals or entities to assist or supervise parolees; and to issue rules and regulations for effectuating these powers. *Id.* § 4203. In addition, the Chairman of the Parole Commission has the authority to appoint and fix the compensation of the Parole Commission's employees, including hearing officers, to assign duties among officers and employees of the Parole Commission, and to otherwise administer the Parole Commission. *Id.* § 4204. The Parole Commission comprises nine Commissioners appointed for six year terms. *Id.* § 4202. The statute also includes a holdover provision under which Commissioners continue to serve until a successor is appointed, "except that no Commissioner may serve in excess of twelve years." *Id.*

The Sentencing Reform Act of 1984 ("SRA"), Pub. L. No. 98-473, 98 Stat. 1837, 1987 (1984), abolished parole for all federal offenders sentenced under its provisions. To accomplish this, the SRA repealed the parole provisions, including the provision establishing the Parole Commission, of title 18 of the United States Code, effective November 1, 1987. In order to accommodate those prisoners sentenced under the sentencing system in place before enactment of the SRA — and therefore still eligible for parole — the SRA specifically provided that the parole

166

provisions would remain in effect for five years after the SRA's effective date. It added that, § 4202 notwithstanding, "the term of office of a Commissioner who is in office on the effective date is extended to the end of the five year period after the effective date of this Act." Pub. L. No. 98-473, § 235(b)(2), 98 Stat. at 2032. In 1990, Congress realized that there would be a need for the Parole Commission beyond the five year extension period and amended § 235(b) to provide a ten year period, Pub. L. No. 101-650, 104 Stat. at 5115, which apparently will carry the Parole Commission through to November 1, 1997. *See* Memorandum for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Michael A. Stover, General Counsel, United States Parole Commission (June 2, 1994).

In 1987, this office issued an opinion concluding that the five year extension in SRA § 235(b)(2) was unconstitutional, apparently on the grounds that any legislation purporting to extend the term of an incumbent officeholder violates the Appointments Clause. *See Reappointment of United States Parole Commissioners,* 11 Op. O.L.C. 135 (1987). The opinion concluded, however, that since the pre-existing holdover provision at 18 U.S.C. § 4202 is valid, incumbents whose terms expired could remain in place for up to a total of twelve years, unless a successor was sooner appointed. We are informed that this twelve year period will elapse in early 1995 for at least three Commissioners who were in office on the effective date of the SRA. *See* Memorandum for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Jamie S. Gorelick, Deputy Attorney General, *Re: Request for Opinion on Term Lengths of United States Parole Commissioners* at 2 (June 1, 1994). Because we conclude that the term extension at SRA § 235(b)(2) is in fact valid, any Commissioners who were validly in office on the effective date of the SRA may continue in office until November 1, 1997.[1]

## II.

### A.

The Constitution prohibits Congress from exercising the power to appoint officers of the United States. U.S. Const. art. II, § 2, cl. 2; *Buckley v. Valeo*, 424 U.S. 1, 124-41 (1976). On the other hand, the Constitution endows Congress with authority to create and structure offices. U.S. Const. art. I, § 8, cl. 18. This power has been taken to encompass the authority to add germane duties to an office, *see Shoemaker v. United States*, 147 U.S. 282 (1893), and to set and amend the term of an office. *See In re Investment Bankers Inc.*, 4 F.3d 1556 (10th Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *In re Benny*, 812 F.2d 1133 (9th Cir. 1987), *cert.*

---

[1] The question we have been asked to address is the general one of whether the Appointments Clause stands as a bar to the operation of § 235(b)(2). Answering this question does not depend upon the specific circumstances of any particular Commissioner. Moreover, we have not been provided any such information, and thus do not draw any conclusions as to how or whether § 235(b)(2) applies to any specific Commissioner.

*denied,* 510 U.S. 1029 (1993); *In re Koerner,* 800 F.2d 1358 (5th Cir. 1986); *Civil Service Retirement Act — Postmasters — Automatic Separation from the Service,* 35 Op. Att'y Gen. 309, 314 (1927).

These provisions are placed in potential tension when Congress extends the term of an office and seeks to apply the extension to the incumbent officeholder. Whether any tension actually results depends on how the extension functions. If applying an extension to an incumbent officer would function as a congressional appointment of the incumbent to a new term, then it violates the Appointments Clause. The classic example of legislation that raises this tension is an extension of the tenure of an officer whom the President may remove only "for cause."[2]

At the other end of the continuum is legislation that extends the term of an office, including its incumbent, the holder of which is removable at will. In this instance, it has long been the position of the Office of Legal Counsel and the Department of Justice that there is no violation of the Appointments Clause, for here the President remains free to remove the officer and embark on the process of appointing a successor — the only impediment being the constitutionally sanctioned one of Senate confirmation. In short, such legislation leaves the appointing authority — and incidental removal power — on precisely the same footing as it was prior to the enactment of the legislation. *See* Sentencing Commission Opinion at 7-9 ("In sum, the extension of tenure of officers serving at will raises no Appointments Clause problem"); *Displaced Persons Commission — Terms of Members,* 41 Op. Att'y Gen. 88, 89-90 (1951).[3] This office has opined that Parole Commissioners are removable at will. *See* Memorandum for Rudolph W. Giuliani, Associate Attorney General from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: The President's Power to Remove Parole Commissioners* (Aug. 11, 1981) ("Parole Commisioner Removal Memorandum"). If we adhere to this view, the extension of the Parole Commissioners' terms does not violate the Appointments Clause.

---

[2] While such a statute "is constitutionally questionable," it would not represent a per se violation of the Appointments Clause  *See* Memorandum for the Attorney General from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Whether Members of the Sentencing Commission Who Were Appointed Prior to the Enactment of a Holdover Statute May Exercise Holdover Rights Pursuant to the Statute* at 9 (Apr 5, 1994) ("Sentencing Commission Memorandum"); *see also Benny,* 812 F 2d at 1141

[3] Our 1987 opinion asserts that an extension of the term of an officer violates the Appointments Clause. It does not discuss any distinction between offices held at will and those that include removal protection. Since the only two Office of Legal Counsel opinions cited in the 1987 opinion both held that Parole Commissioners are removable at will by the President, *see Reappointment of United States Parole Commissioners,* 11 Op. O.L.C. 135, 136 n 1 (1987), the best reading of the opinion is that it meant that every legislative extension of the term of an incumbent officer violates the Appointments Clause. This assertion was, at the time it was made, contrary to this Department's long-standing position, *see, e.g.,* 41 Op. Att'y Gen. at 89-90, 35 Op Att'y Gen at 314, and has not been followed since that time, *see* Sentencing Commission Opinion Moreover, and most importantly, the 1987 opinion is irredeemably unpersuasive It makes no effort to explain how legislation extending the term of an officer who serves at will impinges on the power of appointment, and we can conceive of no credible argument that an infringement rising to the level of a constitutional violation may result from such legislation. Consequently, we withdraw the holding in the 1987 opinion that any legislation extending the term of an officer who is removable at will violates the Appointments Clause.

## B.

The statute establishing the Parole Commission provides that it is an independent agency within the Department of Justice and that the Commissioners are to serve six-year terms. 18 U.S.C. § 4202. The statute, however, is silent as to whether the President may remove the Commissioners at will or only "for cause." As indicated, we have opined that Parole Commissioners are removable by the President at will. Our conclusion had two bases — first, that there was no indication that Congress intended to limit the President's removal authority and, second, that any attempt to limit the President's removal authority would be unconstitutional since the Commissioners are "purely executive" officers. *See* Parole Commissioner Removal Memorandum. The second basis of our conclusion followed then-applicable Supreme Court precedent on the constitutionality of restrictions on the President's authority to remove officers.

The Supreme Court first addressed the question of such removal restrictions in *Myers v. United States,* 272 U.S. 52 (1926),[i] which involved a statute that required the President to obtain the Senate's advice and consent before removing a Postmaster of the first, second, or third class. The *Myers* Court held that Congress may not limit the President's authority to remove any officer who is appointed by the President by and with the advice and consent of the Senate. *Id.* at 159. Several years later, the Court narrowed this holding significantly, ruling that the Constitution only prohibits removal restrictions with respect to "purely executive" officers. *See Humphrey's Executor v. United States,* 295 U.S. 602, 627-28 (1935). The Court held that, as to offices that are essentially quasi-legislative or quasi-judicial in nature, Congress may limit the President's removal authority. Some years later, the Court addressed the related question of whether, in the absence of an express statutory provision, a removal restriction could be inferred. The Court ruled that such restrictions could be inferred with respect to quasi-legislative or quasi-judicial offices "whose tasks require absolute freedom from Executive interference." *Wiener v. United States,* 357 U.S. 349, 353 (1958). Following this framework, we opined that Parole Commissioners — whose term is fixed by a statute that is silent on the topic of removal — are purely executive officers; therefore, inferring a limit on the President's authority to remove them would violate the Constitution. As such, we concluded that Parole Commissioners must be removable at will.

In the interim, the Supreme Court has abandoned this mode of analysis. Specifically, *Morrison v. Olson,* 487 U.S. 654 (1988), determined that Congress could place an express "for cause" limitation on the President's removal authority even with respect to "purely executive" officers. *See id.* at 689-93. The Court refused simply to apply the category-driven approach that *Humphrey's Executor* had been taken to institute. Instead, the Court recast its prior references to the category of an office's functions as merely a shorthand for the animating concern in such cases — whether a given removal restriction violates separation of powers principles. Spe-

cifically, under the Court's current formulation, "the real question is whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty, and the functions of the officials in question must be analyzed in that light." *Morrison*, 487 U.S. at 691.

In devising this formulation, the Court recharacterized the references to functional categories in its earlier opinions as simply a means of examining whether the office and its functions were of such a nature as to require that they be vested in an officer who is subject to a high degree of presidential control; that is, one who may be removed at will. *Id.* at 687-91. It is important to note that, under the *Morrison* formulation, the nature of an office and its functions remain essential factors in determining whether a removal restriction violates separation of powers; however, the category with which those functions might be labeled does not end the inquiry.

The statute establishing the Parole Commission is silent regarding removal, *see* 18 U.S.C. § 4202, and therefore we must determine whether it is appropriate to infer such a restriction. *Morrison*, however, spoke directly only to the constitutionality of an explicit removal restriction. It therefore only expressly rejected the label-driven approach in that context. Nevertheless, the *Wiener* Court stated that its holding followed logically from *Humphrey's Executor*. *See* 357 U.S. at 356. We view *Morrison*, then, as doing away with the label-driven analysis in the context of inferred removal restrictions as well.

In *Morrison*, the Court looked to what the earlier decisions were trying to accomplish by inquiring into the nature of the office and functions at issue to resolve whether, and when, Congress may expressly limit the President's removal authority. Taking a similar approach in the context of implied removal restrictions, we are persuaded that *Wiener* turned on the Court's determination that the Commission could not have effectively carried out its functions unless the Commission was "'entirely free from the control or coercive influence, direct or indirect,' of either the Executive or the Congress." *Wiener*, 357 U.S. at 355-56 (quoting *Humphrey's Executor*, 295 U.S. at 629).

Therefore, our inquiry regarding inferred removal restrictions will focus on whether it is necessary in order for the entity in question to be able to perform its statutory mission that it be "free from the control or coercive influence, direct or indirect, of either the Executive or Congress." Only where this level of independence is necessary will we infer that Congress intended the President's removal authority to be limited.[4] Here again, the type of function being performed is a relevant consideration, but it is not dispositive.[5]

---

[4] We have no doubt that, even after *Morrison*, courts will continue to infer removal restrictions with respect to offices charged primarily with the adjudication of disputes between private individuals. However, it is less clear what other circumstances, if any, would justify inferring a limitation on the President's removal authority

[5] If it is determined that an implied removal limitation is necessary, we must then examine whether such a limitation would violate the doctrine of separation of powers by "imped[ing] the President's ability to perform his constitutional duty." *Morrison*, 487 U.S. at 691.

Under this standard, we have no trouble adhering to our 1981 opinion that the President may remove Parole Commissioners at will. Because the power to remove is incident to the power to appoint, we begin with the presumption that the President has authority to remove Parole Commissioners at will. *See, e.g., Removal of Members of the Advisory Council on Historic Preservation*, 6 Op. O.L.C. 180, 188 (1982); 1 Annals of Cong. 496 (Joseph Gales ed., 1789) (statement of James Madison) ("the power of removal result[s] by a natural implication from the power of appointing"). Our 1981 opinion analyzed the Parole Commission's functions and concluded that the Commission is purely executive in nature. This is an important indication, though not determinative, that it is not necessary to the Commission's function that it have the level of independence that "for cause" removal protection entails. Our earlier opinion also searched the legislative history and examined the statutory language and concluded that "[n]either . . . disclose[d] a Congressional intent to limit the President's implied power to remove the Commissioners." Parole Commissioner Removal Memorandum at 2.[6] We see no reason to revisit any of these conclusions.

We find compelling the history of the discharge of the parole function. "[P]arole originated as a form of clemency; to mitigate unusually harsh sentences, or to reward prison inmates for their exemplary behavior while incarcerated." S. Rep. No. 94-369, at 15 (1975), *reprinted in* 1976 U.S.C.C.A.N. 335, 336. Clemency, like the correctional functions it at least partially supports, has long been and typically remains a power exercised by or under the direction of a politically accountable executive official. *Cf.* U.S. Const. art. II, § 2, cl. 1 (vesting the pardon power in the President).

Until the relatively recent establishment of the Parole Commission, the function of administering the federal parole system was discharged by the Board of Parole. This board was a component of the Department of Justice, and its members were clearly removable at will. *See* Act of Sept. 30, 1950, ch. 1115, 64 Stat. 1085, 1085 ("There is hereby created in the Department of Justice a Board of Parole . . . ."); Act of June 25, 1948, ch. 645, 62 Stat. 683, 854 (containing no provision of a fixed or abbreviated term). The legislative history contains no indication that the threat of removal at will or other political pressures played any role in the operations of the Board of Parole or motivated the establishment of the Parole Commission. *See* S. Rep. No. 94-369, at 15, *reprinted in* 1976 U.S.C.C.A.N. at 336. In the face of this long-standing practice of entrusting the administration of the federal parole system to officers who are removable at will, we cannot say that a limitation on the President's authority to remove Parole Commissioners is necessary to allow the Commission effectively to carry out its statutorily prescribed functions.

---

[6] The opinion expressly considered and persuasively rejected arguments that either the provision creating the Commission as an independent agency in the Department of Justice or establishing fixed terms for the Commissioners could support an inference of a restriction on the President's removal authority *Id* at 1-4.

## III. Conclusion

Legislation extending the term of an officer who serves at will does not violate the Appointments Clause. As stated, we adhere to our opinion that the President may remove Parole Commissioners at will. Consequently, Pub. L. No. 101-650, § 316, 104 Stat. at 5115, which extends the terms of office of certain United States Parole Commissioners, does not violate the Appointments Clause, and we recede from our earlier opinion (*Reappointment of United States Parole Commissioners*, 11 Op. O.L.C. 135 (1987)) to the extent that it contradicts this conclusion.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*